AMBER L. ECK (177882)
  ambere@haelaw.com
ALREEN HAEGGQUIST (221858)
  alreenh@haelaw.com
ROBERT PRINE (312432)
  robertp@haelaw.com
HAEGGQUIST & ECK, LLP
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

Attorneys for Plaintiffs and Proposed Class

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAPPY'S BARBER SHOPS, INC. and PAPPY'S BARBER SHOP POWAY, INC., Individually and Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FARMERS GROUP, INC., FARMERS INSURANCE COMPANY, INC., and TRUCK INSURANCE EXCHANGE,<br><br>Defendants. | Case No.: **'20 CV0907 CAB BLM**<br>**CLASS ACTION**<br><br><br>COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT AND UNFAIR BUSINESS PRACTICES<br><br><br><br>DEMAND FOR JURY TRIAL |

HAEGGQUIST & ECK, LLP

# **TABLE OF CONTENTS**

I.    NATURE OF THE ACTION.................................................................................3

II.   JURISDICTION AND VENUE............................................................................5

III.  PARTIES..............................................................................................................6

    A.    Plaintiffs .....................................................................................................6

    B.    Defendants...................................................................................................6

IV.   FACTUAL BACKGROUND ...............................................................................7

    A.    The COVID-19 Pandemic ...........................................................................7

    B.    Governments Across the Country Order Everyone to "Stay at home" and Non-essential Businesses to Close ............................................................8

    C.    The Losses From These Business Closures are Covered Business Interruptions Under Farmers' Insurance Policies.....................................9

    D.    Farmers' Denial of Plaintiffs' and other Policyholders' Insurance Claims ............14

V.    CLASS ACTION ALLEGATIONS.....................................................................17

VI.   CAUSES OF ACTION .......................................................................................21

COUNT I Declaratory Judgment – Business Income Coverage.......................................21

COUNT II Breach Of Contract – Business Income Coverage..........................................23

COUNT III Declaratory Judgment – Civil Authority Coverage.......................................24

COUNT IV Breach Of Contract – Civil Authority Coverage...........................................26

COUNT V Declaratory Judgment – Extra Expense Coverage .........................................27

COUNT VI Breach Of Contract – Extra Expense Coverage ...........................................28

COUNT VII Unfair Business Practices Under Bus. & Prof. Code §17200, *et seq*.........................29

VII.  PRAYER FOR RELIEF......................................................................................32

VIII. JURY DEMAND ................................................................................................33

HAEGGQUIST & ECK, LLP

2

Case No.:

COMPLAINT

Plaintiffs Pappy's Barber Shops, Inc. and Pappy's Barber Shop Poway, Inc. ("Pappy's Barber Shop" or "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against defendants Farmers Group, Inc., Farmers Insurance Company, Inc. and Truck Insurance Exchange (collectively, "Defendants" or "Farmers"), and allege as follows based on personal knowledge as to themselves and upon information and belief as to other matters based on their counsel's investigation. Plaintiffs believe additional evidentiary support exists for their allegations, given an opportunity for discovery.

## I.    NATURE OF THE ACTION

1.    Plaintiffs and other businesses nationwide purchased commercial property insurance to protect their business if they had to temporarily shut down. They reasonably believed their policies would help protect their businesses in the unlikely event the government ever ordered them to stop or severely restrict operations (in connection with a pandemic or any other Covered Cause of Loss). However, after collecting billions of dollars in premiums, Farmers and other insurers are now categorically refusing to pay these legitimate claims for business interruption coverage claims.

2.    California and the vast majority of states across the country have entered civil authority orders requiring residents to "stay-at-home" or "shelter-in-place" and suspending or severely limiting business operations of non-essential businesses that interact with the public and/or provide social gathering places (collectively, the "COVID-19 Civil Authority Orders").

3.    These broad COVID-19 Civil Authority Orders have been financially devastating for most non-essential businesses, especially salons, restaurants, retail stores, entertainment venues, and other small, medium, and large businesses who have been forced to close, furlough employees, and submit to a sudden shutdown of operations and cash flow that threatens their survival.

HAEGGQUIST & ECK, LLP

4.    Many businesses purchased insurance to protect against losses from catastrophic events like the current unforeseen COVID-19 pandemic through all-risk commercial property insurance policies. These policies promise to indemnify the policyholder for actual business losses incurred when business operations are involuntarily suspended, interrupted, curtailed, or when access to the premises is prohibited because of direct physical loss or damage to the property, or by a civil authority order that restricts or prohibits access to the property. This coverage, commonly known as "business interruption coverage," is standard in most all-risk commercial property insurance policies.

5.    Despite the provision of business interruption coverage in these policies, Farmers is denying its obligation to pay for business income losses and other covered expenses incurred by policyholders for the physical loss and damage to the insureds' property arising from the COVID-19 Civil Authority Orders.

6.    Plaintiffs bring this action on behalf of a Nationwide Class and a California Sub-Class (defined below) of policyholders who purchased standard Farmers commercial property insurance policies which provide for business income loss and extra expense coverage and do not exclude coverage for pandemics, and who have suffered losses due to measures put into place by a COVID-19 Civil Authority Order.

7.    This action seeks a declaratory judgment that Farmers is contractually obligated to pay business interruption losses incurred due to Plaintiffs' and other Class members' compliance with COVID-19 Civil Authority Orders. In addition, Plaintiffs seek damages, attorneys' fees and costs, and any other relief that this Court deems equitable and just, arising out of Farmers' breach of contract and wrongful conduct.

8.    Specifically, Plaintiffs, individually and on behalf of the Nationwide Class and California Sub-Class bring claims for: (1) declaratory judgment regarding business income coverage pursuant to 28 U.S.C. §2201; (2) breach of contract

regarding business income coverage; (3) declaratory judgment regarding civil authority coverage pursuant to 28 U.S.C. §2201; (4) breach of contract regarding civil authority coverage; (5) declaratory judgment regarding extra expense coverage pursuant to 28 U.S.C. §2201; (6) breach of contract regarding extra expense coverage; and (7) unfair business practices under Business & Professions Code §17200 *et seq.*

## II.    JURISDICTION AND VENUE

9.      This Court has original jurisdiction over this action under 28 U.S.C. §1332(a) as well as the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), as to the named Plaintiffs and every member of the Nationwide Class and California Sub-Class, because both of the proposed Classes contain more than 100 members, the aggregate amount in controversy exceeds $5 million, and Class members reside in California and are therefore diverse from Farmers. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

10.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction for the purpose of this Complaint. This Court has personal jurisdiction over Farmers because it does a substantial amount of business in California, including in this District, is authorized to conduct business in California, including in this District, and/or has intentionally availed itself of the laws and markets of this District through the use, promotion, sale, marketing, and/or distribution of its products and services at issue in this Complaint. Defendants' liability to Plaintiffs, the Nationwide Class and California Sub-Class arises from and relates to Defendants' conduct within the state of California. As set forth herein, Defendants acted within California to sell various business insurance policies within the state of California. Thus, Defendants have purposefully availed themselves of the benefits and protections of the state of California in conducting their unlawful enterprise, which purposeful availment constitutes sufficient minimum contacts with the state of California that the exercise of personal jurisdiction over Defendants with

HAEGGQUIST & ECK, LLP

regard to the claims of Plaintiffs, the Nationwide Class and California Sub-Class, and does not violate Due Process.

11.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper under 18 U.S.C. §1965(a), because Farmers transacts a substantial amount of its business in this District. Alternatively, venue is proper under 28 U.S.C. §1391(b)(3) because this Court has personal jurisdiction over Defendants.

## III.    PARTIES

### A.    Plaintiffs

12.    Plaintiff Pappy's Barber Shops, Inc. is a California corporation with its principal place of business in San Diego, California. Pappy's Barber Shops, Inc. has been in business for 10 years, is owned by Marc Bennett, and is located at 6528 El Cajon Blvd., San Diego, California 92115, in the college area of San Diego. Plaintiff Pappy's Barber Shops, Inc. was forced to close entirely on March 19, 2020 due to the applicable COVID-19 Civil Authority Orders.

13.    Plaintiff Pappy's Barber Shop Poway, Inc. is a California corporation with its principal place of business in San Diego, California. Pappy's Barber Shop Poway, Inc. has been in business since August 2019, is owned by Marc Bennett, and is located at 13334 Poway Road, Poway, California 92064. Plaintiff Pappy's Barber Shop Poway, Inc. was forced to close entirely on March 19, 2020 due to the applicable COVID-19 Civil Authority Orders.

### B.    Defendants

14.    Defendant Farmers Group, Inc. is a California corporation with its headquarters and principal place of business in Los Angeles, California. Farmers also does business as Farmers Underwriters Association, and owns the service marks "Farmers Insurance Group of Companies" and "Farmers Insurance Group."

15.    Defendant Farmers Insurance Company, Inc. is a Kansas corporation

with its principal place of business in Woodland Hills, California. It owns subsidiaries, directly and indirectly, that issue, among other things, property insurance.

16.    Defendant Truck Insurance Exchange is a California corporation with its principal place of business in Woodland Hills, California. It is a subsidiary of Farmers and is duly qualified and licensed to issue insurance in the State of California and other states

17.    Farmers issued Policy No. 60664-84-35 to Pappy's Barber Shop for the policy period of February 1, 2020 through February 1, 2021 ("Plaintiffs' Farmers Policy").

## IV.   FACTUAL BACKGROUND

### A.    The COVID-19 Pandemic

18.    COVID-19 is an infectious disease caused by a recently discovered novel coronavirus known as SARS-CoV-2 ("Coronavirus" or "COVID-19"). The first instances of the disease spreading to humans were diagnosed in or around December 2019.

19.    On January 30, 2020, the World Health Organization ("WHO") declared that the Coronavirus outbreak constituted a public health emergency of international concern.

20.    On March 11, 2020, the WHO declared Coronavirus a worldwide pandemic.

21.    On March 13, 2020, President Trump declared the COVID-19 pandemic to be a national emergency.

22.    On March 16, 2020, the Centers for Disease Control and Prevention ("CDC") and national Coronavirus Task Force issued guidance to the American public advising individuals to adopt social distancing measures.

23.    As of May 14, 2020, the number of confirmed cases of COVID-19 is

HAEGGQUIST & ECK, LLP

over 4 million worldwide, with nearly 300,000 deaths,[1] with the United States dealing with nearly 1.4 million confirmed cases and over 82,000 reported deaths – more than any other country in the world.[2]

### B. Governments Across the Country Order Everyone to "Stay at home" and Non-essential Businesses to Close

24.     On March 4, 2020, California Governor Gavin Newsom declared a state of emergency and on March 12, 2020, issued an executive order directing California residents to cancel large non-essential gatherings.

25.     On March 16, 2020, San Diego's mayor, Kevin Faulconer issued Executive Order No. 2020-1, prohibiting any gathering of 50 or more people and discouraging all non-essential gatherings of any size. On April 30, 2020, the Mayor issued Executive Order 2020-3, extending the executive order until May 31, 2020.[3]

26.     On March 19, 2020, Gov. Newsom issued Executive Order N-33-20, requiring "all individuals living in the State of California to stay home or at their place of residence except as needed" for essential service and engage in strict social distancing. The Order incorporated by reference California Government Code §8665, which provides that "[a]ny person . . . who refuses or willfully neglects to obey any lawful order . . . issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one

---

[1]     *See Coronavirus disease (COVID-19) Situation Report – 113*, World Health Organization, https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200512-covid-19-sitrep-113.pdf?sfvrsn=feac3b6d_2 (last visited May 14, 2020).
[2]     *See Cases in the U.S.*, Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited May 14, 2020).
[3]     *See City of Executive Order No. 2020-3 By the Mayor*, the City of San Diego, https://www.sandiego.gov/sites/default/files/mkf_executive_order_2020-04-30-2020_3.pdf (last visited May 14, 2020).

HAEGGQUIST & ECK, LLP

COMPLAINT

Case No.:

thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment." *Id.*

27. All California businesses not deemed essential, including Pappy's Barber Shop, were ordered to close their doors.

28. Other states around the Country have implemented similar orders, requiring large scale business closures and imposing other limitations on businesses that prevent them from operating or limit their operations.

29. For example, on March 16, 2020, New York Governor Andrew Cuomo, New Jersey Governor Phil Murphy and Connecticut Governor Ned Lamont ordered the closure of all gyms, movie theaters, bars and casinos. They also ordered all restaurants to close except for take-out and delivery orders.

30. Altogether, 49 state governments have enacted at least one civil authority order prohibiting or severely limiting restaurants and other non-essential businesses. In addition to California, all but six states have enacted a COVID-19 Civil Authority Order, including "stay-at-home" or "shelter-in-place" orders; 35 states have closed all non-essential businesses with other states taking measures to limit business operations. All 50 states have closed schools, and all but one state (South Dakota) has closed restaurants and bars for services other than take-out and delivery.

**C.    The Losses From These Business Closures are Covered Business Interruptions Under Farmers' Insurance Policies**

31. The insurance policies Farmers issued to Plaintiffs and other Class members are standard commercial property polices that cover loss or damage to the covered premises resulting from all risks other than those expressly excluded.

32. Plaintiffs' Farmers Policy, as well as the policies of other Class members, is a standard form used by Farmers for all insureds with applicable coverage.

33. Among the coverages provided by Plaintiffs' Farmers Policy was

business interruption coverage, which, generally, indemnifies Plaintiffs for lost income and profits if their business is shut down.

34.    Pappy's Barber Shop's Businessowners Special Property Coverage Form, Form BP 00 02 01 97, provides coverage as follows:

**1.    Business Income**

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

* * *

We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage.

**2.    Extended Business Income**

If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(a) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

(b) Ends on the earlier of:

(i) The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

Case No.:

HAEGGQUIST & ECK, LLP

(ii) 30 consecutive days after the date determined in(2)(a)above.

35.    Pappy's Barber Shop's Businessowners Special Property Coverage Form, Form BP 00 02 01 97, provided Civil Authority coverage as follows:

**i.    Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for necessary Extra Expense will begin immediately after the time of that action and ends:

(1)    3 consecutive weeks after the time of that action; or

(2)    When your Business Income coverage ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance.

36.    In addition, Pappy's Barber Shop's Businessowners Special Property Coverage Form, Form BP 00 02 01 97, provided coverage as follows:

**g.    Extra Expense**

(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to

COMPLAINT

Case No.:

HAEGGQUIST & ECK, LLP

property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a) The portion of the building which you rent, lease or

(b) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises. Extra Expense means expense incurred: To avoid or minimize the suspension of business and to continue "operations": At the described premises; or At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations. To minimize the suspension of business if you cannot continue "operations".

37.     Under Pappy's Barber Shop's Businessowners Special Property Coverage Form, Form BP 00 02 01 97, Business Income is defined as:

(i)  Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage has occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

(ii)  Continuing normal operating expenses incurred, including payroll.

**5.      Exclusions**

38.     The interruption of Plaintiffs' and other Class members' businesses was

HAEGGQUIST & ECK, LLP

not caused by any of the exclusions set forth in the applicable policies, including Plaintiffs' Farmers Policy.

39.    Pappy's Barber Shop policy contains a Mold and Microorganism Exclusion, which purports to exclude "[a]ny loss, cost or expense arising out of the abating, testing for monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effect of 'mold' or 'microorganism', by any insured or by any other person or entity."

40.    Plaintiffs' Mold and Microorganism Exclusion does not exclude Plaintiffs' losses because the efficient proximate cause of its losses was precautionary measures taken by the state to prevent the spread of COVID-19 in the future, not because coronavirus was found on or around Plaintiffs' insured properties.

41.    Pappy's Barber Shop policy also contains an Exclusion of Loss Due to Virus or Bacteria, which excludes "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

42.    Plaintiffs' Exclusion of Loss Due to Virus or Bacteria provision does not exclude Plaintiffs' losses because the efficient proximate cause of losses was precautionary measures taken by the state to prevent the spread of COVID-19 in the future, not because coronavirus was found on or around Plaintiffs' insured properties.

43.    Plaintiffs' policy also contains a Limited Coverage for Fungi, Wet Rot, Dry Rot, and Bacteria provision, which excludes from coverage:

> (a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or
>
> (b) The costs associated with the enforcement of any

COMPLAINT

Case No.:

HAEGGQUIST & ECK, LLP

> ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

44.     Plaintiffs' Limited Coverage for Fungi, Wet Rot, Dry Rot, and Bacteria provision in their policy does not exclude Plaintiffs' losses because the efficient proximate cause of losses was precautionary measures taken by the state to prevent the spread of COVID-19 in the future, not because coronavirus was found on or around Plaintiffs' insured properties.

45.     Plaintiffs and all Class members have suffered a direct physical loss of and damage to their property because they have been unable to use their property for its intended purpose.

**D.     Farmers' Denial of Plaintiffs' and other Policyholders' Insurance Claims**

46.     On April 1, 2020, Plaintiffs requested insurance coverage from Farmers. Farmers notified Plaintiffs that same day it was denying their claim for business interruption losses. Farmers issued a formal denial letter two days later on April 3, 2020.

47.     Farmers denied Plaintiffs' claims without any inspection or review of either of Pappy's Barber Shop's physical locations or documents concerning their business activities in 2020.

48.     Farmers has thereby waived any right to inspect those premises, deny coverage for any reason related to conditions at those locations, or raise any defense related to conditions at those locations or facts specific to Plaintiffs.

49.     The speed with which Farmers denied Plaintiffs' claims indicates that Farmers could not have engaged in a good faith or reasonable investigation of the claims which included assessment of facts or issues relevant to Plaintiffs.

50.     Farmers accepted the premiums paid by Plaintiffs with no intention of

COMPLAINT

Case No.:

HAEGGQUIST & ECK, LLP

providing lost business income, physical damage, civil authority, or other applicable coverage for claims like those submitted by Plaintiffs and the proposed Class members and which were denied by Farmers.

51.    Farmers' rejection of Plaintiffs' claims was part of Farmers' policy to limit its losses during this pandemic, despite the fact that the Policies provide coverage for losses due to loss of use of property and from closure orders issued by civil authorities (among other coverage).

52.    Although industry trade groups have argued that insurance companies do not have the funds to pay claims related to the Coronavirus and will require government assistance, the reality is that insurers are simply trying to minimize their exposure. Collectively, the U.S. property-casualty insurance industry has about $800 billion in surplus, the industry term for assets minus liabilities.[4]

53.    Farmers collected more than $20 billion in insurance premiums for property related insurance in 2018 alone.[5] Notwithstanding this, they appear to be categorically denying claims brought by businesses ordered to close following the Coronavirus.  This strategy, and their public requests for government assistance, suggest that their true goal is minimizing payments by any means necessary.

54.    Farmers' wrongful denials of Plaintiffs' claims were not isolated incidents. Rather, on information and belief, Farmers has engaged in the same misconduct with claims submitted by numerous Farmers' insureds who have suffered losses related to the Coronavirus pandemic and submitted claims which were

_____

[4]    Leslie Scism, *The Legal Fight Between Insurers and Businesses is Expanding*, Wall Street Journal, (April 29, 2020), available at https://www.wsj.com/articles/the-legal-fight-between-insurers-and-businesses-is-expanding-11588166775?mod=searchresults&page=1&pos=3 (last visited May 14, 2020).

[5]    *See Facts + Statistics – Industry overview*, Insurance Information Institute, available at https://www.iii.org/fact-statistic/facts-statistics-industry-overview (last visited May 14, 2020).

COMPLAINT

Case No.:

HAEGGQUIST & ECK, LLP

categorically denied.

55.    Plaintiffs' claims and those of the proposed Class all arise from a single course of conduct by Farmers: its systematic and blanket refusal to provide any coverage for business losses related to the COVID-19 pandemic and the related actions taken by civil authorities to suspend business operations.

56.    Farmers' wrongful conduct has caused significant damage, and if left unchecked will continue to cause significant damage, to Plaintiffs and the other members of the proposed Class.

57.    Farmers' categorical treatment, failure to investigate in good faith, and denial of Plaintiffs' and the Class members' claims appears to be part of a broader strategy being employed by the insurance industry generally, to broadly deny claims for business interruption coverage related to the Coronavirus pandemic, as has been widely reported by the media and resulted in numerous lawsuits brought by businesses against property insurance companies throughout the country.

58.    Many small businesses that maintain commercial policies with business interruption coverage will have significant uninsured losses absent declaratory relief from this Court. Indeed, even if state and local governments re-open, small businesses will almost certainly still be under social-distancing mandates, and salons such as Pappy's Barber Shop, will continue to experience diminishing revenues.

59.    A declaratory judgment is necessary to determine that the business income loss and extra expense coverage provided in standard Farmers commercial property insurance policies applies to the suspension, curtailment, and interruption of business operations resulting from Civil Authority Orders, and to prevent Plaintiffs and similarly situated Class members from being denied critical coverage for which they have paid premiums.

Case No.:

HAEGGQUIST & ECK, LLP

## V.    CLASS ACTION ALLEGATIONS

60.    Pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 23(a),(b)(2), and (b)(3) Plaintiffs bring their claims on behalf of themselves and on behalf of all other persons similarly situated, and seek to represent the following "Nationwide Class" and "California Sub-Class":

61.    The Nationwide Class is defined as:

> All persons and entities who have entered into a standard commercial property insurance policy with a Farmers insurance carrier to insure property in the United States, where such policy provides for business income loss and extra expense coverage and does not exclude coverage for pandemics, and who have suffered losses due to measures put in place by a COVID-19 Civil Authority Order.

62.    The California Sub-Class is defined as:

> All persons and entities who have entered into a standard commercial property insurance policy with a Farmers insurance carrier to insure property in California, where such policy provides for business income loss and extra expense coverage and does not exclude coverage for pandemics, and who have suffered losses due to measures put in place by a COVID-19 Civil Authority Order.

63.    Excluded from each of the Classes are the Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

64.    Plaintiffs reserve the right to modify, expand, or amend the definitions of the proposed Classes after discovery and before the Court determines whether class certification is appropriate.

65.    Class certification of Plaintiffs' claims is appropriate because Plaintiffs

HAEGGQUIST & ECK, LLP

can prove the elements of their claims on a class-wide basis using the same evidence as would prove those elements in individual actions alleging the same claims.

### Numerosity: Rule 23(a)(1)

66.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The Classes number at least in the hundreds and consist of geographically dispersed business entities who are insured for business interruption losses. Farmers sells many insurance policies nationwide and in the State of California and, therefore, joinder of the Class members is impracticable.

67.    The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Farmers' or their agents' books and records. Plaintiffs anticipate providing appropriate notice to the certified Classes in compliance with Fed. R. Civ. P. 23(c)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

### Typicality: Rule 23(a)(3)

68.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of each of the Class members, as all Class members were and are similarly affected and their claims arise from the same standard policy provisions entered into with Farmers. Each Class members' insurance policy contains the same form providing coverage for business income loss. None of the forms exclude coverage due to a governmental action intended to reduce the effect of the ongoing global pandemic. As a result, a declaratory judgment as to the rights and obligations under Plaintiffs' policy will address the rights and obligations of all Class members.

### Adequacy: Rule 23(a)(4)

69.    Plaintiffs will fairly and adequately represent and protect the interests of the Class and California Sub-Class members. Plaintiffs have retained counsel competent and experienced in complex class action litigation, including insurance

HAEGGQUIST & ECK, LLP

Case No.:

coverage and other consumer protection litigation. Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Class members.

**Commonality and Predominance: Rule 23(a)(2)**

70.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) because there are questions of law and fact that are common to each of the Classes. These common questions predominate over any questions affecting only individual Class members. The questions of law and fact common to the Classes include, but are not limited to:

(a)    Whether there is an actual controversy between Plaintiffs and Farmers as to the rights, duties, responsibilities and obligations of the parties under the business interruption coverage provisions in standard commercial property insurance policies;

(b)    Whether measures to reduce the spread of the COVID-19 pandemic are excluded from Plaintiffs' and Class members' standard commercial property insurance policies;

(c)    Whether the measures put in place by civil authorities to stop the spread of COVID-19 caused physical loss or damage to the covered commercial property;

(d)    Whether Farmers has breached the insurance policies with business interruption coverage by denying or intending to deny claims for coverage;

(e)    Whether Farmers' violations of the standard commercial property insurance policies were committed intentionally, recklessly, or negligently and;

(f)    Whether Plaintiffs and Class members suffered damages as a result of Farmers' breach.

Case No.:

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

### Superiority of Class Action: Rule 23(b)(3)

71.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the rights of the Class members. The joinder of individual Class members is impracticable because of the large number of Class members who purchased commercial property insurance policies from Farmers.

72.    Because a declaratory judgment as to the rights and obligations under the uniform insurance policies will apply to all Class members, most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions. The burden imposed on the judicial system by individual litigation, and to Farmers, by even a small fraction of the Class members, would be enormous.

73.    In comparison to piecemeal litigation, class action litigation presents far fewer management difficulties, conserves the resources of both the judiciary and the parties, and protects the rights of each Class member more effectively. The benefits to the parties, the Court, and the public from class action litigation substantially outweigh the expenses, burdens, inconsistencies, economic infeasibility, and inefficiencies of individual litigation. Class adjudication is superior to other alternatives under Fed. R. Civ. P. 23(b)(3)(D). Class treatment will also avoid the substantial risk of inconsistent factual and legal determinations on the many issues in this lawsuit.

74.    Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify nationwide and statewide classes for claims sharing common legal questions; use the provisions of Rule 23(c)(4) to certify particular claims, issues, or common questions of law or of fact for class-wide adjudication; certify and adjudicate bellwether class claims; and use Rule 23(c)(5) to divide any class into Sub-Classes.

75.    There are no individualized factual or legal issues for the court to resolve that would prevent this case from proceeding as a class action. Class action treatment will allow those who are similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the court. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### Rule 23(b)(2) Certification

76.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2). The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants.

77.    In addition, the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

78.    Defendants have also acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## VI.    CAUSES OF ACTION

### COUNT I
### Declaratory Judgment – Business Income Coverage
### (On Behalf of the Nationwide Class and California Sub-Class)

79.    Plaintiffs hereby reallege and incorporate by reference the allegations contained in the paragraphs above, as if fully set forth herein.

80.    Plaintiffs bring this Count individually and on behalf of the other members of the Nationwide Class and California Sub-Class.

81.    Plaintiffs' Farmers Policy, as well as those of the other Class members,

Case No.:

HAEGGQUIST & ECK, LLP

is a contract under which Farmers was paid premiums in exchange for its contractual agreement to pay Plaintiffs', and the other Class members', losses for claims covered by the policy.

82.    As part of standard business interruption coverage, Farmers agreed to pay for insureds' loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration." Farmers also agreed to pay its insureds' actual loss of Business Income sustained due to the necessary "suspension of [their] operations" during the "period of restoration" caused by direct physical loss or damage. "Business Income" under the policies means the "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred," as well as "[c]ontinuing normal operating expenses incurred, including payroll."

83.    The COVID-19 Civil Authority Orders caused direct physical loss and damage to Plaintiffs' and the other Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Accordingly, losses caused by the COVID-19 Civil Authority Orders triggered the Business Income provision of Plaintiffs' and the other Class members' Farmers policies.

84.    Plaintiffs and other Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Farmers or Farmers is estopped from asserting them. Yet Farmers has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide the coverage to which Plaintiffs and Class members are entitled.

85.    Farmers has denied Plaintiffs' and other Class members' claims for business interruption losses caused by COVID-19 Civil Authority Orders on a uniform and class-wide basis without individual bases or investigations, so the Court can render declaratory judgment regardless of whether a particular Class member has filed a claim.

86.    An actual case or controversy exists regarding Plaintiffs' and the other

87.    Class members' rights and Farmers' obligations under the policies to pay for losses incurred by Plaintiffs and the other Class members in connection with the business interruption caused by COVID-19 Civil Authority Orders.

88.    Pursuant to 28 U.S.C. §2201, Plaintiffs and other Class members seek a declaratory judgment from this Court as follows:

> (i) Plaintiffs' and the other Class members' Business Income losses incurred due to COVID-19 Civil Authority Orders are insured losses under their Farmers policies; and

> (ii) Farmers is obligated to pay Plaintiffs and other Class members for the full amount of their Business Income losses (up to the maximum allowable amount under the policies) incurred in connection with the COVID-19 Civil Authority Orders during the period of restoration and the necessary interruption of their businesses stemming therefrom.

## COUNT II
### Breach Of Contract – Business Income Coverage
### (On Behalf of the Nationwide Class and California Sub-Class)

89.    Plaintiffs hereby reallege and incorporate by reference the allegations contained in the paragraphs above, as if fully set forth herein.

90.    Plaintiffs bring this Count individually and on behalf of the other members of the Nationwide Class and California Sub-Class.

91.    Plaintiffs' Farmers Policy, as well as those of other Class members, is a contract under which Farmers was paid premiums in exchange for its promise to pay Plaintiffs', and the other Class members', losses for claims covered by the policies.

92.    As part of standard business interruption coverage, Farmers agreed to pay for insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration." Farmers also agreed to pay its insureds' actual loss of Business Income sustained due to the necessary

Case No.:

HAEGGQUIST & ECK, LLP

"suspension of [their] operations" during the "period of restoration" caused by direct physical loss or damage. "Business Income" under the policies means the "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred," as well as "[c]ontinuing normal operating expenses incurred, including payroll."

93.    The COVID-19 Civil Authority Orders caused direct physical loss and damage to Plaintiffs' and the other Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Accordingly, losses caused by the COVID-19 Civil Authority Orders triggered the Business Income provision of Plaintiffs' and the other Class members' Farmers policies.

94.    Plaintiffs and the other Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Farmers and/or Farmers is estopped from asserting them. Yet Farmers has abrogated its insurance coverage obligations under the policies' clear and unambiguous terms. By denying coverage for any Business Income loss incurred by Plaintiffs or other Class members as a result of the COVID-19 Civil Authority Orders, Farmers has breached its coverage obligations under the policies.

95.    As a result of Farmers' breaches of contract, Plaintiffs and other Class members have sustained substantial damages for which Farmers is liable in an amount to be established at trial.

**COUNT III**
**Declaratory Judgment – Civil Authority Coverage**
**(On Behalf of the Nationwide Class and California Sub-Class)**

96.    Plaintiffs hereby reallege and incorporate by reference the allegations contained in the paragraphs above, as if fully set forth herein.

97.    Plaintiffs brings this Count individually and on behalf of the other members of the Nationwide Class and California Sub-Class.

98.    Plaintiffs' Farmers Policy, as well as those of other Class members, is a

HAEGGQUIST & ECK, LLP

contract under which Farmers was paid premiums in exchange for its promise to pay Plaintiffs', and other Class members', losses for claims covered by the policy.

99.    Plaintiffs' Farmers Policy provided for "Civil Authority" coverage, which promises to pay "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." Accordingly, the COVID-19 Civil Authority Orders triggered the Civil Authority provision under Plaintiffs' and the other Class members' Farmers policies.

100.    Plaintiffs and Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Farmers and/or Farmers is estopped from asserting them. Yet Farmers has abrogated its insurance coverage obligations under the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and Class members are entitled.

101.    Farmers has denied claims related to COVID-19 on a uniform and class wide basis without individual bases or investigations, so the Court can render declaratory judgment regardless of whether a particular Class member has filed a claim.

102.    An actual case or controversy exists regarding Plaintiffs' and other Class members' rights and Farmers' obligations under the policies to reimburse Plaintiffs and other Class members for the full amount of covered Civil Authority losses incurred by Plaintiffs and other Class members in connection with COVID-19 Civil Authority Orders and the necessary interruption of their businesses stemming therefrom.

103.    Pursuant to 28 U.S.C. §2201, Plaintiffs and other Class members seek a declaratory judgment from this Court declaring the following:

Case No.:

HAEGGQUIST & ECK, LLP

(i) Plaintiffs' and other Class members' Civil Authority losses incurred in connection with COVID-19 Civil Authority Orders and the necessary interruption of their businesses stemming therefrom are insured losses under their policies; and

(ii) Farmers is obligated to pay Plaintiffs and other Class members for the full amount of their Civil Authority losses (up to the maximum allowable amount under the policies) incurred in connection with the COVID-19 Civil Authority Orders and the necessary interruption of their businesses stemming therefrom.

## COUNT IV
### Breach Of Contract – Civil Authority Coverage
### (On Behalf of the Nationwide Class and California Sub-Class)

104. Plaintiffs hereby reallege and incorporate by reference the allegations contained in the paragraphs above, as if fully set forth herein.

105. Plaintiffs bring this Count individually and on behalf of the other members of the Nationwide Class and California Sub-Class.

106. Plaintiffs' Farmers Policy, as well as those of other Class members, is a contract under which Farmers was paid premiums in exchange for its promise to pay Plaintiffs', and the other Class Members', losses for claims covered by the policy.

107. Plaintiffs' Farmers Policy provided for "Civil Authority" coverage, which promises to pay "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." Accordingly, the COVID-19 Civil Authority Orders triggered the Civil Authority provision under Plaintiffs' and the other Class members' Farmers policies.

108. Plaintiffs and the other Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Farmers

HAEGGQUIST & ECK, LLP

and/or Farmers is estopped from asserting them. Yet Farmers has abrogated its insurance coverage obligations under the policies' clear and unambiguous terms. By denying coverage for any business losses incurred by Plaintiffs and other Class members in connection with the COVID-19 Civil Authority Orders, Farmers has breached its coverage obligations under the policies.

109.   As a result of Farmers' breaches of contract, Plaintiffs and other Class members have sustained substantial damages for which Farmers is liable in an amount to be established at trial.

**COUNT V**
**Declaratory Judgment – Extra Expense Coverage**
**(On Behalf of the Nationwide Class and California Sub-Class)**

110.   Plaintiffs hereby reallege and incorporate by reference the allegations contained in the paragraphs above, as if fully set forth herein.

111.   Plaintiffs bring this Count individually and on behalf of the other members of the Nationwide Class and the California Sub-Class.

112.   Plaintiffs' Farmers Policy, as well as those of other Class Members, is a contract under which Farmers was paid premiums in exchange for its promise to pay Plaintiffs', and other Class members', losses for claims covered by the policies.

113.   Plaintiffs' Farmers Policy provided that Farmers would pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the described premises. "Extra Expense" means expenses "[t]o avoid or minimize the suspension of business and to continue 'operations,'" and to repair or replace property. Due to the COVID-19 Civil Authority Orders, Plaintiffs and other Class members incurred Extra Expense at their Covered Properties.

114.   Plaintiffs and other Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Farmers and/or Farmers is estopped from asserting them. Yet Farmers has abrogated its insurance

Case No.:

HAEGGQUIST & ECK, LLP

coverage obligations under the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiffs and Class members are entitled.

115.    Farmers has denied claims related to COVID-19 on a uniform and class-wide basis without individual bases or investigations, so the Court can render declaratory judgment regardless of whether a particular Class member has filed a claim.

116.    An actual case or controversy exists regarding Plaintiffs' and other Class members' rights and Farmers' obligations under the policies to reimburse Plaintiffs and the other Class members for the full amount of Extra Expense losses incurred by Plaintiffs and Class members in connection with COVID-19 Civil Authority Orders and the necessary interruption of their businesses stemming therefrom.

117.    Pursuant to 28 U.S.C. §2201, Plaintiffs and other Class members seek a declaratory judgment from this Court declaring the following:

(i) Plaintiffs' and other Class members' Extra Expense losses incurred in connection with the COVID-19 Civil Authority Orders and the necessary interruption of their businesses stemming therefrom are insured losses under their policies; and

(ii) Farmers is obligated to pay Plaintiffs and other Class members for the full amount of their Extra Expenses losses (up to the maximum allowable amount under the policies) in connection with the COVID- 19 Civil Authority Orders and the necessary interruption of their businesses stemming therefrom.

## COUNT VI
### Breach Of Contract – Extra Expense Coverage
### (On Behalf of the Nationwide Class and California Sub-Class)

118.    Plaintiffs hereby reallege and incorporate by reference the allegations contained in the paragraphs above, as if fully set forth herein.

Case No.:

HAEGGQUIST & ECK, LLP

119.   Plaintiffs bring this Count individually and on behalf of the other members of the Nationwide Class and California Sub-Class.

120.   Plaintiffs' Farmers Policy, as well as those of the other Class members, is a contract under which Farmers was paid premiums in exchange for its promise to pay Plaintiffs', and the other Class members', losses for claims covered by the policy.

121.   Plaintiffs' Farmers Policy provided that Farmers agreed to pay necessary Extra Expense that it incurred during the "period of restoration" that would not have incurred if there had been no direct physical loss or damage to the described premises. "Extra Expense" means expenses "[t]o avoid or minimize the suspension of business and to continue 'operations,'" and to repair or replace property. Due to the COVID-19 Civil Authority Orders, Plaintiffs and other Class members incurred Extra Expense at their Covered Properties.

122.   Plaintiffs and other Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Farmers and/or Farmers is estopped from asserting them. Yet Farmers has abrogated its insurance coverage obligations under the policies' clear and unambiguous terms.

123.   By denying coverage for any business losses incurred by Plaintiffs and other Class members in connection with the COVID-19 Civil Authority Orders, Farmers has breached its coverage obligations under the policies.

124.   As a result of Farmers' breaches of the policies, Plaintiffs and the other Class members have sustained substantial damages for which Farmers is liable in an amount to be established at trial.

**COUNT VII**
**Unfair Business Practices Under Bus. & Prof. Code §17200, *et seq*.**
**(On Behalf of Plaintiffs and the California Sub-Class)**

125.   Plaintiffs hereby reallege and incorporate by reference the allegations contained in the paragraphs above, as if fully set forth herein.

126.   Plaintiffs bring this Count individually and on behalf of the other

Case No.:

HAEGGQUIST & ECK, LLP

members of the Nationwide Class and California Sub-Class.

127.   By its conduct, Farmers has engaged in unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code ("Bus. & Prof. Code") §17200 *et seq*. ("UCL")

128.   Farmers' conduct violates the "unlawful" prong of the UCL because it violated the letter and spirit of California's Insurance Code ("Cal. Ins. Code"), including California Insurance Code §790, *et seq.* because Farmers failed or refused to perform a fair, objective, and thorough investigation of the Plaintiffs' and the California Sub-Class members' claims.  Farmers denied Plaintiffs' and the California Sub-Class members' claims as part of Farmers' policy of categorically denying all business interruption claims related to Coronavirus, and ignored other California requirements concerning the proper and fair evaluation of claims and interpretations of its policies. Farmers' conduct also constituted breach of contract.

129.   Farmers' conduct violates the "unfair" prong of the UCL, including but not limited to Farmers': (a) categorical and wrongful denial of Plaintiffs' and the California Sub-Class members' claims; (b) failure and refusal to perform a fair, objective, good-faith, and thorough investigation of the claims as directed by the California Insurance Code; (c) denial of Plaintiffs' and the California Sub-Class members' claims as part of a policy of categorically denying claims related to Coronavirus; and (d) failing to interpret its policies in an equitable manner and/or up to the standards required by California law (including but not limited to Cal. Ins. Code §790 *et seq*.).

130.   Farmers' conduct is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and the California Sub-class.

131.   Farmers' conduct also violates California public policy, including the policy reflected in Cal. Ins. Code §790 *et seq.* and elsewhere in the California

Case No.:

HAEGGQUIST & ECK, LLP

Insurance Code.

132.   Farmers' conduct violates the "fraudulent" prong of the UCL. Among other things, Farmers: (a) promised Plaintiffs and the California Sub-Class coverage that was not provided and that Farmers had no intention of providing; (b) promised to evaluate each claim individually, reasonably, and in good faith, which Farmers did not do with respect to Plaintiffs' and the California Sub-Class members' claims, and (c) falsely and misleadingly indicated to Plaintiffs and the California Sub-Class that it was investigating in good faith (and had investigated in good faith) their claims, which Farmers did not do and knew that it did not do. Farmers collected Plaintiffs' and the California Sub-Class members' premiums in exchange for coverage that was not provided, induced those premiums by promising to evaluate each claim individually, reasonably, and in good faith and did not, and denied Plaintiffs' and the California Sub-Class members' claim as part of a policy of categorically denying claims related to Coronavirus as part of a strategy to reduce its insurance payments related to Coronavirus.

133.   Farmers' fraudulent and deceptive conduct was false and misleading, had a tendency to deceive reasonable insureds, and did deceive Plaintiffs and the California Sub-Class. Plaintiffs and members of the California Sub-Class reasonably relied on Farmers' deceptions and omissions, including but not limited to by paying premiums to Farmers.

134.   By reason of Farmers' unlawful, unfair, and fraudulent conduct in violation of the UCL, Plaintiffs and members of the California Sub-Class suffered and continue to suffer damages, including but not limited to premiums they have paid to Farmers and the non-receipt of insurance benefits that Famers owes them.

135.   Plaintiffs and the California Sub-Class are entitled to restitution from Farmers (with interest thereon), to disgorgement of all Farmers' profits arising out of its violations of the UCL (with interest thereon), and payment of benefits due to

Plaintiffs and members of the California Sub-Class that Farmers has wrongfully retained through its violations of the UCL.

136.    Pursuant to California Code of Civil Procedure §1021.5, Plaintiffs are entitled to recover their reasonable attorneys' fees.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all similarly situated individuals and entities, pray for relief and judgment against Defendants as follows:

A.    Determining that this action is a proper class action under one or more provisions of Federal Rule of Civil Procedure 23, appointing Plaintiffs to serve as a Class Representatives and appointing its counsel to serve as Class Counsel;

B.    Issuing a Declaratory Judgment declaring the parties' rights and obligations under the insurance policy provisions at issue;

C.    Awarding Plaintiffs and the Classes compensatory damages against Defendants, jointly and severally, for all damages sustained as a result of Defendants' breach of the policies in an amount to be proven at trial, including interest thereon;

D.    Awarding Plaintiffs and the Classes pre-judgment and post-judgment interest as well as reasonable attorneys' fees and expenses incurred in this action; and

E.    Awarding such other relief as the Court may deem just and proper.

Case No.:

## VIII.  JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: May 14, 2020

HAEGGQUIST & ECK, LLP
AMBER L. ECK
ALREEN HAEGGQUIST
ROBERT PRINE


By: _____
          AMBER L. ECK

225 Broadway, Suite 2050
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

Attorneys for Plaintiffs and Proposed Class

HAEGGQUIST & ECK, LLP

CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 14, 2020.

/s/ *Amber L. Eck*
AMBER L. ECK

HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ALREEN HAEGGQUIST (221858)
ROBERT PRINE (312432)
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
ambere@haelaw.com
alreenh@haelaw.com
robertp@haelaw.com

HAEGGQUIST & ECK, LLP

Case No.: