AMBER L. ECK (177882)
  ambere@haelaw.com
ALREEN HAEGGQUIST (221858)
  alreenh@haelaw.com
ROBERT D. PRINE (312432)
  robertp@haelaw.com
HAEGGQUIST & ECK, LLP
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

Attorneys for Plaintiffs and Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAPPY'S BARBER SHOPS, INC. and PAPPY'S BARBER SHOP POWAY, INC., Individually and Behalf of All Others Similarly Situated, | Case No.: 3:20-cv-00907-CAB-BLM |
| | **CLASS ACTION** |
| Plaintiffs, | PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS |
| vs. | Judge: Hon. Cathy A. Bencivengo Courtroom: 4C, 4th Floor (Carter/Keep) Hearing Date: September 14, 2020 |
| FARMERS GROUP, INC., FARMERS INSURANCE COMPANY, INC., and TRUCK INSURANCE EXCHANGE, | |
| Defendants. | (PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY COURT) |

HAEGGQUIST & ECK, LLP

## TABLE OF CONTENTS

Page

I.   INTRODUCTION AND FACTUAL SUMMARY ............................................ 1

II.   THE COMPLAINT PROPERLY PLEADS CAUSES OF ACTION UNDER EVERY LEGAL THEORY CHALLENGED BY DEFENDANTS' MOTION TO DISMISS .......................................... 4

    A.   Plaintiffs Must Only State a Plausible Claim for Relief ........................ 4

    B.   Plaintiffs Have Sufficiently Alleged They Suffered a Covered "Direct Physical Loss" Due to COVID-19 and the Shut-Down Orders ............................................................................................ 5

    C.   Plaintiffs Have Sufficiently Stated a Claim for Civil Authority Coverage ............................................................................ 10

    D.   Plaintiffs Have Sufficiently Stated a Claim for Business Income and Extra Expense Coverage ................................................. 12

III.   PLAINTIFFS HAVE SUFFICIENTLY STATED A CLAIM FOR UNFAIR AND UNLAWFUL BUSINESS PRACTICES UNDER THE UCL ............................................................................................. 14

IV.   FARMERS GROUP, INC. AND FARMERS INSURANCE COMPANY, INC. ARE PLAUSIBLY LIABLE AND PROPERLY NAMED AS DEFENDANTS .......................................................... 15

V.   CONCLUSION .................................................................. 16

HAEGGQUIST & ECK, LLP

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AIU Ins. Co. v. Superior Court*,
    51 Cal. 3d 807 (1990) ............................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................4, 5, 15

*Caul v. Winter*,
    No. 06CV2096 WQH (LSP), 2007 U.S. Dist. LEXIS 68207
    (S.D. Cal. Sept. 13, 2007) ...............................................................15-16

*Craig Cooper & Olive Indus. v. Travelers Indem. Co. of Ill.*,
    No. C-01-2400 VRW, 2002 U.S. Dist. LEXIS 29085, *12 (N.D.
    Cal. Nov. 4, 2002) .........................................................................6, 12

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ...........................................................14

*Essex Ins. Co. v. BloomSouth Flooring Corp.*,
    562 F. 3d 399 (1st Cir. 2009) .............................................................9-10

*General Mills, Inc. v. Gold Medal Ins. Co.*,
    622 N.W. 2d 147 (Minn. Ct. App. 2001) ..............................................6

*Gibson v. Fedex Corp.*,
    No. 2:09-cv-01738-MCE-KJM, 2010 U.S. Dist. LEXIS 70235
    (E.D. Cal. July 13, 2010) ...................................................................16

*Local Initiative Health Auth. for L.A. Cty. v. OneBeacon Prof'l Ins., Inc.*,
    Case No. EDCV 16-4810-VAP, 2017 U.S. Dist. LEXIS 160557
    (C.D. Cal. July 7, 2017) .......................................................................5

*Mosk v. National Research Co. of Cal.*,
    201 Cal. App. 2d 765 (1962) ..............................................................14

*Motorists Mutual Ins. Co. v. Hardinger*,
    131 F. App'x 823 (3d. Cir. 2005) .......................................................10

HAEGGQUIST & ECK, LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

HAEGGQUIST & ECK, LLP

*MRI Healthcare Ctr. Of Glendale, Inc. v. State Farm Gen Ins. Co.*,
   187 Cal. App. 4th 766 (2010) ..................................................................5, 7, 8, 9

*Nat'l Ink & Stitch, LLC v. State Auto Prop. & Cas. Ins. Co.*,
   435 F. Supp. 3d 679 (Dist. Md. Jan. 23, 2020) ....................................... 9

*Port. Auth. v. Affiliated FM Ins. Co.*,
   311 F. 3d 226 (3d Cir. Nov. 14, 2002) ..................................................... 9

*Prudential Prop. & Cas. Ins. Co. v. Lilliard-Roberts*,
   No. CV-01-1362-ST, 2002 U.S. Dist. LEXIS 20387
   (D. Or. June 18, 2002) ............................................................................. 6

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
   Case No. SA CV 08-367 ........................................................................... 5

*Shirley v. Allstate Ins. Co.*,
   392 F. Supp. 3d 1185 (S.D. Cal. 2019) ................................................... 5

*State Farm. Mut. Auto Ins. Co. v. Spann*,
   31 Cal. App. 3d 97 (1973) ....................................................................... 5

*State of California v. Continental Ins. Co.*,
   55 Cal. 4th 186 (2012) ............................................................................. 6

*Studio 417 v. Cincinnati Ins. Co.*,
   No. 20-cv-03127-SRB, 2020 U.S. Dist. LEXIS 147600
   (W.D. Mo., Aug. 12, 2020) ...........................................................4, 5, 6, 12

*Total Intermodal Servs. v. Travelers Prop. Cas. Co. of Am.*,
   No. CV 17-04908 AB, 2018 U.S. Dist. LEXIS 216917
   (C.D. Cal. July 2018)...........................................................................7, 8, 9, 12

*TRAVCO Ins. Co. v. Ward*,
   715 F. Supp. 2d 699 (E.D. Va. 2010 ....................................................... 9

*US Airways, Inc. v. Commonwealth Ins. Co.*,
   64 Va. Cir. 408 (Va. May 14, 2004)....................................................... 13

*Waller v. Truck Ins. Exchange, Inc.*,
   11 Cal. 4th 1 (1995)...............................................................................5-6

*Ward Gen. Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*,
   114 Cal. App. 4th 548 (2003) .............................................................. 5, 8

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*,
    178 F. Supp. 2d 1099 (C.D. Cal. Apr. 20, 2001) ......................................... 14, 15

*Zhang v. Superior Court*,
    57 Cal. 4th 364 (2013) .......................................................................................... 15

**Statutes, Rules, & Regulations**

28 U.S.C.
    §2679(d)(1) .......................................................................................................... 16

42 U.S.C.
    §2000e-16(c) ........................................................................................................ 16

California Business & Professions Code
    §17200 ...........................................................................................................*passim*

California Insurance Code
    §790. ............................................................................................................... 14, 15

HAEGGQUIST & ECK, LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# I.     INTRODUCTION AND FACTUAL SUMMARY

For years, Pappy's Barber Shops, Inc. and Pappy's Barber Shop Poway, Inc. ("Plaintiffs") have owned and operated successful hair salons in San Diego County. To ensure their continued success in case of the worst, Plaintiffs purchased comprehensive commercial insurance policies from Defendants.  Indeed, Plaintiffs paid expensive premiums for years, and Farmers collected billions of dollars from Plaintiffs and other similarly situated policyholders.  In exchange for the premiums, Defendants made the following promises:

- **<u>Civil Authority</u>**: "We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss or damage to the property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."

- **<u>Business Income</u>**: "We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'  The suspension must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss."

- **<u>Extended Business Income</u>**: "If the necessary suspension of your 'operations' produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period …."

- **<u>Extra Expense</u>**: "We will pay necessary Extra Expense you incur during 'the period of restoration' that you would have not incurred if there had been no direct physical loss or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss."

Plaintiffs reasonably believed these robust polices would protect their businesses in the unlikely, but possible, event that the government ordered them to cease or severely restrict operations.  As we know now, 2020 has been a year of the unexpected.  In the early months of 2020, SARS-CoV-2 ("COVID-19") walloped the globe and, on March 11, 2020, the World Health Organization deemed COVID-19 a global pandemic.  To mitigate the spread of COVID-19, California Governor Gavin Newsom issued Executive Order N-33-20 on March 19, 2020, requiring "all individuals living in the State of California to stay home or at their place of residence except as needed" for essential service and engage in strict social distancing.  All California businesses not deemed essential, including Plaintiffs' businesses, were ordered to close their doors.[1]  Notably, any person who violated this order would be guilty of a misdemeanor.

Plaintiffs' businesses have sustained substantial losses during the pandemic due to COVID-19 and the shutdown orders.[2]  The shutdown orders have been financially devastating for Plaintiffs' business, as well as for other businesses throughout the nation that are subject to similar orders.  Plaintiffs, and thousands of other businesses, have suffered and continue to suffer a direct physical loss of and damage to their property because they have been unable to use their property for its intended purpose.  Plaintiffs, however, reasonably believed the insurance they had paid into for years would cover their financial losses.  Indeed, the policy explicitly provided coverage for losses caused by a civil authority order, and all reasonable minds would agree this unlikely, but possible, scenario would be covered under such an explicit provision.

---

[1]   Other states around the country have implemented similar orders, requiring large scale business closures and imposing other limitations on businesses that prevent them from operating or limit their operations.

[2]   On May 27, 2020, salons and barbershops were able to reopen, so long as the businesses adhered to a number of state-mandated guidelines.  However, due to a spike in COVID-19 cases, San Diego County again closed indoor operations for hair salons and barbershops.

HAEGGQUIST & ECK, LLP

On April 1, 2020, Plaintiffs requested insurance coverage from Defendants. Defendants, in dereliction of their contractual duties, notified Plaintiffs that same day they were denying Plaintiffs' claims for business interruption losses. Defendants sent a formal denial letter two days later on April 3, 2020. Adding insult to injury, Defendants rejected Plaintiffs' claims without any inspection or review of Plaintiffs' physical locations or documents concerning their business activities in 2020. Indeed, the speed with which Defendants denied Plaintiffs' claims shows Defendants could not have engaged in a good faith or reasonable investigation of Plaintiffs' claims. This curt response is part and parcel of Defendants overall strategy for COVID-19-related business interruption claims – to avoid its responsibilities at all cost to circumvent a potentially large financial payout. Doc. No. 1 at 15, ¶¶52-53.

Plaintiffs are not alone, as Defendants have, on information and belief, categorically denied claims by numerous insureds who have suffered losses related to the COVID-19 pandemic. Plaintiffs and these other businesses' damages all arise from a single course of conduct by Defendants: their systematic and blanket refusal to provide any coverage for business losses related to the COVID-19 pandemic and the related actions taken by civil authorities to suspend business operations. For years, Defendants accepted the premiums paid by Plaintiffs, and thousands of other businesses, and now have no intention to living up to their end of the bargain.

Accordingly, to vindicate their rights and the rights of many other businesses, Plaintiffs filed this operative Class Action Complaint on May 14, 2020. Doc. No. 1 ("Complaint"). The Complaint alleges class claims for: (1) declaratory judgment – business income coverage; (2) breach of contract – business income coverage; (3) declaratory judgment – civil authority coverage; (4) breach of contract – civil authority coverage; (5) declaratory judgment – extra expense coverage; (6) breach of contract – extra expense coverage, and, on behalf of Plaintiffs and the California Sub-class; and (7) unfair business practices under Business & Professions Code §17200, *et seq.* ("UCL"). Doc. No. 1 at 4-5, ¶8.

HAEGGQUIST & ECK, LLP

On August 10, 2020, Defendants filed this Motion to Dismiss. Doc. No. 16 ("Motion"). The crux of the Motion is that Plaintiffs have failed to sufficiently allege "direct physical loss of or damage to property," required for coverage. Thus, Defendants contend Plaintiffs cannot state a claim for declaratory judgment, breach of contract, or the related UCL claim. Finally, Defendants argue the Complaint fails to allege sufficient facts to establish liability for Defendants Farmers Group, Inc. ("FGI") and Farmers Insurance Company, Inc. ("Farmers Kansas").

A federal court just weeks ago denied a defendant insurer's motion to dismiss a similar COVID-19 business interruption class action brought by hair salons and restaurants in federal court in Missouri. *See Studio 417 v. Cincinnati Ins. Co.*, No. 20-cv-03127-SRB, 2020 U.S. Dist. LEXIS 147600, *1 (W.D. Mo., Aug. 12, 2020). The Court in *Studio 417* held that the plaintiffs could proceed with their class action against Cincinnati Insurance Company for refusing to provide coverage for their losses during COVID-19 shutdowns, finding that Plaintiffs adequately alleged that they suffered a covered "direct physical loss" due to COVID-19 and the shut-down orders. *Id*. at *10-21. Likewise, Plaintiffs here, at the motion to dismiss stage, have adequately alleged a direct physical loss under the policy, and Defendants' motion to dismiss should be denied.

## II. THE COMPLAINT PROPERLY PLEADS CAUSES OF ACTION UNDER EVERY LEGAL THEORY CHALLENGED BY DEFENDANTS' MOTION TO DISMISS

### A. Plaintiffs Must Only State a Plausible Claim for Relief

If a complaint contains well-pleaded factual allegations, a court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. 678, 129 S. Ct. 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Importantly, "[t]he

4

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).[3]

### B. Plaintiffs Have Sufficiently Alleged They Suffered a Covered "Direct Physical Loss" Due to the COVID-19 Shut-Down Orders

Defendants' primary argument is that plaintiffs have not adequately alleged a "physical loss" as required by the Policy. Doc. No. 16 at 15. Defendants argue that "direct physical loss" means that the property must be "physically damaged" or "physically altered." *Id.* However, as the Court found in *Studio 417*, Plaintiffs here have alleged physical loss caused by the COVID-19 closure orders that required Plaintiffs to cease and/or significantly reduce operations and have prohibited access to the premises. *Studio 417*, 2020 U.S. Dist. LEXIS 147600, *18.

The Court in *Studio 417* found that where, as here, the Policies do not define a direct "physical loss," the court must "'rely on the plain and ordinary meaning of the phrase,'" including standard dictionary definitions. *Id.* at *11 (quoting *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 763 (8th Cir. 2020); *see also Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 18 (1995) (The interpretation of an insurance policy is a question of law, requiring the court to "look first to the language of the contract in

---

[3]     The published cases Defendants rely upon were all decided in motions for summary judgment, rather than the less stringent standard of a motion to dismiss. *See MRI Healthcare Ctr. Of Glendale, Inc. v. State Farm Gen Ins. Co.*, 187 Cal. App. 4th 766, 785 (2010) (affirming a summary judgment order); *Ward Gen. Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*, 114 Cal. App. 4th 548, 559 (2003), *as modified on denial of reh'g* (Jan. 7, 2004) (same); *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, Case No. SA CV 08-367 AHS(RNBx), 2011 WL 13130000, at *7 (C.D. Cal. June 1, 2011), *aff'd in part, rev'd in part*, 752 F. 3d 807 (9th Cir. 2014) (appeal of summary judgment); *Shirley v. Allstate Ins. Co.*, 392 F. Supp. 3d 1185, 1186 (S.D. Cal. 2019) (summary judgment order); *Local Initiative Health Auth. for L.A. Cty. v. OneBeacon Prof'l Ins., Inc.*, Case No. EDCV 16-4810-VAP (AGRx), 2017 U.S. Dist. LEXIS 160557 at *1-2 (C.D. Cal. July 7, 2017) (same); *State Farm. Mut. Auto Ins. Co. v. Spann*, 31 Cal. App. 3d 97, 98 (1973) (appeal from summary judgment order).

HAEGGQUIST & ECK, LLP

order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it.")  When interpreting a policy provision, the Court must give the policy's terms their "'ordinary and popular sense,' unless 'used in a technical sense or a special meaning is given to them by usage ….'" *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990) (quoting Cal. Civ. Code §1644).

When the plain meaning of a policy provision diverges into two or more reasonable constructions, the provision is considered ambiguous.  *Id*.  When a policy's language is ambiguous, it will be construed against the insurer.  *State of California v. Continental Ins. Co.*, 55 Cal. 4th 186, 195 (2012).

As the Court found in *Studio 417*, jurisdictions around the country have held that a property that is uninhabitable or unsuitable for its intended purpose qualifies as a physical loss under commercial property insurance policies.  *Studio 417*, 2020 U.S. Dist. LEXIS 147600, *14-16.  *See Prudential Prop. & Cas. Ins. Co. v. Lilliard-Roberts*, No. CV-01-1362-ST, 2002 U.S. Dist. LEXIS 20387, at *26-27 (D. Or. June 18, 2002) ("inability to inhabit a building [is] a 'direct, physical loss' covered by insurance"); *General Mills , Inc. v. Gold Medal Ins. Co.*, 622 N.W. 2d 147, 152 (Minn. Ct. App. 2001) ("'direct physical loss' can exist without actual destruction of property or structural damage to property") (quoting *Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34 (1968)).

California courts have also held that "physical loss" under similar policies do not require physical alteration to property.  In *Craig Cooper & Olive Indus. v. Travelers Indem. Co. of Ill.*, the U.S. District Court for the Northern District of California held that an E. coli contamination constituted direct physical damage to the property.  *Cooper*, No. C-01-2400 VRW, 2002 U.S. Dist. LEXIS 29085, *12 (N.D. Cal. Nov. 4, 2002).  As such, the Court rejected the defendant's argument that structural property damage was required to trigger business interruption cover.  *Id*. Like E. coli, COVID-19 and its accompanying civil authority orders can reasonably

HAEGGQUIST & ECK, LLP

constitute "direct physical loss or damage" to property even though they do not inflict structural damage against the property.

Plaintiffs unequivocally plead in their complaint the exact triggering language from the operative policy, "direct physical loss **of** or damage to property at the described premises." Doc. No. 1 at 11, ¶35 (emphasis added).[4] Defendants falsely analogize this language to the policy in *MRI Healthcare Center of Glendale, Inc.*, where the policy covered **only** "direct physical loss **to** the property." *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*, 187 Cal. App. 4th 766, 770-71 (2010) (emphasis added); *see* Doc. No. 16 at 14-15.

Recently, the Central District of California distinguished *MRI*'s policy language from a policy more akin to the policies issued to Plaintiffs. *See Total Intermodal Servs. v. Travelers Prop. Cas. Co. of Am.*, No. CV 17-04908 AB (KSx), 2018 U.S. Dist. LEXIS 216917 (C.D. Cal. July 2018). The court analyzed the more narrowly tailored policy language in *MRI*, a case decided on summary judgment, which required "'direct physical loss **to** business and personal property.'" *Id*. at *10 (quoting *MRI*, 187 Cal. 4th at 771) (emphasis in original). But, like Plaintiffs' policy, the policy in *Total Intermodal* included "direct physical loss of" and "*MRI* … did not construe the coverage term 'physical loss of' that is at issue here." *Total Intermodal*, 2018 U.S. Dist. LEXIS 216917, at *10. Accordingly, the court rejected the argument that "direct physical loss" required some damage or alteration to the property if the policy language included the words, "physical loss **of**." *Id*. at *10-11 (emphasis added).

Like *Total Intermodal*, the operative policy language, as fully stated in Plaintiffs' Complaint, covers losses caused by civil authority orders due to "physical

---

[4]    The Business Income and Extra Expense clauses also use the operative language, "direct physical loss **of** or damage to property." Doc. No. 1 at 10-12, ¶¶34, 36.

HAEGGQUIST & ECK, LLP

loss of or damage to property…."  Doc No. 1 at 11, ¶33.  Indeed, if Defendants intended to limit the language in the policy, it would have simply omitted the preposition "of" and stated, "physical loss or damage to property."   The *Total Intermodal* decision was decided one year before Plaintiffs renewed their respective insurance policies.  So, Defendants could have modified the business insurance policy through an endorsement and adding the limiting language in *MRI*.   Instead, Defendants intentionally included "of" in the policy, and thus, California law is clear that with that language, visible damage or alteration to the property is not a prerequisite for coverage.

MRI is also distinguishable because the dispute in *MRI* related to property insurance coverage to replace business equipment (an MRI machine that was shut down during a storm), rather than coverage for lost business income.  *See MRI*, 187 Cal. App. 4th at 780.  Furthermore, while there was no physical alteration to the MRI machine in *MRI*, there has been physical alteration to Plaintiffs' businesses because they been physically closed, Plaintiffs cannot physically use the properties, and patrons are not allowed inside the business.  *Id*. Additionally, in contrast to Plaintiffs who had no choice but to close their business based on a civil authority order, the insured in *MRI* made the decision to "ramp-down" the MRI machine, thus causing its own losses.  *Id*. Indeed, extrapolating *MRI*'s narrow holding and shoehorning it into this distinguishable case is simply a veiled attempt to rewrite the policy.

Defendants also cite *Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co*., another case decided on summary judgment, where an insurance company's computer crashed, and the company sought losses for only its lost data.  *Ward Gen. Ins. Servs., Inc.*, 114 Cal. App. 4th 548, 550-551 (2003), *as modified on denial of reh'g* (Jan. 7, 2004).  The Court in *Ward* held the lost data was not a "direct physical loss" because electronically stored data, by itself, was not a "physical loss" under the policy.  *Id*. at 555.  But here, Plaintiffs are not claiming an intangible loss, but rather, the tangible loss of access to their entire business due to its closure.  Indeed, Plaintiffs' physical

HAEGGQUIST & ECK, LLP

loss of their business is distinguishable from losing intangible information.  *See Nat'l Ink & Stitch, LLC v. State Auto Prop. & Cas. Ins. Co.*, 435 F. Supp. 3d 679, 683 (Dist. Md. Jan. 23, 2020) (distinguishing loss of computer system from loss of computer data in *Ward*).  Plaintiffs and other business owners have suffered physical closures of their businesses because of the tangible COVID-19 and written civil authority orders, and as a result of the physical closure, have suffered actual losses.

The essence of Defendants' Motion relies on coverage requiring physical alteration and misuses the holdings in *MRI* and *Ward* to apply to this distinguishable scenario and broader policy language.  Indeed, if physical loss were to mean damage, then the language in the policy would be rendered superfluous.  *See Total Intermodal*, 2018 U.S. Dist. LEXIS 216917 at *3 ("[T]o interpret 'physical loss of' as requiring 'damage to' would render meaningless the 'or damage to' portion of the same clause, thereby violating a black-letter canon of contract interpretation – that every word be given a meaning.").  Furthermore, the policy does not define "direct physical loss" or "damage," even though the policy contains 11 pages of definitions.

Other Courts have defined a direct physical loss of the property when it has become uninhabitable.  For example, the Supreme Court of Colorado found that the closing of the insured's building by fire authorities due to the accumulation of gasoline around the church, making going inside the church dangerous, constituted a physical loss.  *Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 38-39 (Colo. 1968).  A District Court in Oregon similarly opined, "[w]hen the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct loss to its owner."  *Port. Auth. v. Affiliated FM Ins. Co.*, 311 F. 3d 226, 236 (3d Cir. Nov. 14, 2002); *see also TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 709 (E.D. Va. 2010), *aff'd*, 504 F. App'x. 251 (4th Cir. 2013) (holding that a home "uninhabitable by the toxic gases" released by defective drywall was a "direct physical loss" under policy); *Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F. 3d 399, 406 (1st Cir. 2009) (holding an

9

unpleasant odor causing the property to be unsuitable constituted physical injury to property); *Motorists Mutual Ins. Co. v. Hardinger*, 131 F. App'x 823, 825-27 (3d. Cir. 2005) (finding "direct physical loss" when home was deemed uninhabitable due to contamination of water).

Furthermore, the California Insurance Commissioner Bulletin 2020-3 (April 13, 2020) mentioned in Defendants' Motion and attached as Ex. E does not support Defendants' argument that suspension of operations does not constitute property damage or loss. Plaintiffs object to Defendants' Request for Judicial Notice of this document, as Plaintiffs dispute that it stands for the proposition for which Defendants cite it.  Doc. No. 16 at 17, n.5. It says nothing of the sort. The bulletin, issued on April 13, 2020, suggests that there may be less risk and exposure to insurers for certain activities like auto insurance, because certain people may be driving less due to COVID-19. That argument does not hold true for business interruption coverage, where many insureds are suffering loss of use or their property and lost profits due to COVID-19 and the shutdown orders, and are filing claims seeking reimbursement.  In addition, while the Bulletin suggests that when risk is lower, insurers should voluntarily provide premium refunds to their insureds, Defendants here make no contention that they have provided premium refunds to their insureds for business interruption coverage, and certainly have not provided any premium refunds to Plaintiffs. As such, the Bulletin has no relevance to the sufficiency of Plaintiffs' Complaint or Defendants' motion to dismiss, and the Court should disregard the Bulletin and Defendants' argument in its entirety.

## C.    Plaintiffs Have Sufficiently Stated a Claim for Civil Authority Coverage

Similar to Defendants' argument above, Defendants argue that Plaintiffs fail to state a plausible claim for civil authority coverage because: (1) the complaint does not allege ***direct physical loss*** of or damage to property, and (2) it does not allege an action of civil authority that ***prohibits access to*** (or ***imposes restrictions on use of***)

HAEGGQUIST & ECK, LLP

the described premises due to direct physical loss of property, other than at the described premises.  Doc. No. 16 at 18.

As set forth in the section above, Plaintiffs have adequately alleged "direct physical loss."  In addition, the Civil Authority orders clearly prohibited access to or imposed restrictions on the use of the property. In regard to the language regarding physical loss of property "other than at the described premises," there is no definition or explanation of this in the policy.  However, Defendants note in their Motion that if, for example, a whole street was closed due to earthquake or wildfire so that the insured premises were unsafe to access, there would be coverage.  Doc. No. 16 at 18, n.6.  Likewise, here, not only were Plaintiffs' businesses affected due to COVID-19 and the shutdown orders, but all businesses referenced in the Civil Authority orders were shut down, for the safety of the public and the businesses themselves.

Under the policy, the loss of business income must be "caused by action of civil authority…."  In other words, the proximate cause of the loss must be the civil authority order, rather than a "direct physical loss of or damage to property."  Here, the civil authority order clearly was the reason for Plaintiffs' losses, as Plaintiffs' barbershops were operating and accessible on March 18, 2020.  But on March 19, 2020, the civil authority forced Plaintiffs to shut down shop and prevented access to patrons.  In other words, the civil authority order was the "action and condition precedent" for Plaintiffs' business losses.  *Merriam-Webster*, merriam-webster.com/dictionary/cause (last visited August 24, 2020).  The proximate cause of Plaintiffs' damages was the civil authority order, not the existence of COVID-19 in the business.

Defendants make the disingenuous argument that customers merely "chose not to go to Plaintiffs' place of business."  Doc. No. 16 at 16.  Obviously, this is not true.  Defendants make this patently false assertion to circumvent the fact that the civil authority orders clearly prohibited access to the premises.  Merriam-Webster defines "prohibit" as "to forbid by authority."  *Merriam-Webster*, merriam-

webster.com/dictionary/prohibit (last visited August 24, 2020).  As mentioned in the Complaint, violation of the civil authority order may constitute a misdemeanor.[5]  By its plain meaning, the civil authority order prohibited public access to the Plaintiffs' businesses, thus causing significant loss.  Accordingly, it stands to reason, and is plausibly pled in the Complaint, that the civil authority order prohibited access to Plaintiffs' businesses and, thus, caused their business losses.

As the Court stated in *Studio 417*, "[a]t the motion to dismiss stage, these allegations plausibly allege that access was prohibited to such a degree as to trigger the civil authority coverage."  *Studio 417*, 2020 U.S. Dist. LEXIS 147600, *20.  Accordingly, "Plaintiffs have adequately stated a claim for civil authority coverage." *Id.* at *21.

### D.     Plaintiffs Have Sufficiently Stated a Claim for Business Income and Extra Expense Coverage

While the Civil Authority Coverage requires "direct physical loss or damage to property, other than at the described premises," the Business Income and Extra Expense Coverages require, "direct physical loss of or damage to property at the described premises."  Doc. No. 1 at 10-12, ¶¶34, 36.  Again, as set forth above, Plaintiffs have adequately alleged a "direct physical loss of … property."

The terms "direct physical loss of or damage to" are not defined in the policy. However, as discussed previously, caselaw supports that this provision does not require physical alteration.  *See Cooper*, 2002 U.S. Dist. LEXIS 29085 at *12; *Total Intermodal*, 2018 U.S. Dist. LEXIS 216917, at *10.  In addition to "loss or harm resulting from injury to … property," "Damage" can also be defined as "Expense"

---

[5]      "Any person … who refuses or willingly neglects to obey any lawful order … issued as provided by this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable of a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment."  Doc. No. 1 at 8-9, ¶26.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

HAEGGQUIST & ECK, LLP

and "Cost." *Merriam-Webster*, merriam-webster.com/dictionary/damage (last visited August 24, 2020).  Synonyms for "damage" include "impairment," "deprivation," and "detriment."  *See* Damage, Thesarus.com (last visited August 24, 2020).

No doubt, COVID-19 and the shutdown orders have caused an impairment, deprivation, and detriment to the Plaintiffs' businesses and profits.  Plaintiffs' shops went from operating at nearly 100% on March 18, 2020 to 0% on March 19, 2020.  The deprivation of Plaintiffs' businesses have caused a physical loss of the properties under its plain meaning and Plaintiffs' reasonable interpretation.

Defendants' arguments regarding "direct physical loss" are identical to those made by insurers and rejected by the court in *US Airways, Inc. v. Commonwealth Ins. Co.*, 64 Va. Cir. 408 (Va. May 14, 2004), *rev'd on other grounds*, 2006 Va. LEXIS 28 (Va. Mar. 3, 2006).  In *US Airways*, plaintiff airline US Airways sought business interruption coverage when the U.S. government closed the National Airport during the 9/11 attacks. *Id.* at 412.  Plaintiffs' policies, like the Farmers policy here, provided coverage for losses resulting from a civil authority order due to "direct physical loss or damage to property."  *Id.* at 412.  Like Farmers, the insurer in US Airways (Commonwealth) argued that plaintiff failed to show "direct physical loss or damage." The court rejected defendant insurer's argument, finding that actual damage to property was not necessary, and "not a plausible interpretation of the Policy." *Id.* at 415.  Accordingly, the Court denied the insurer's motion for summary judgment. *Id.*

As in *US Airways*, the COVID-19 civil authority orders have not inflicted visible, physical damage to Plaintiffs' premises, but have still resulted in a "loss of" Plaintiffs' properties.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

HAEGGQUIST & ECK, LLP

### III. PLAINTIFFS HAVE SUFFICIENTLY STATED A CLAIM FOR UNFAIR AND UNLAWFUL BUSINESS PRACTICES UNDER THE UCL

The UCL prohibits "any unlawful, unfair or fraudulent business act." Cal. Bus. & Prof. Code §17200. Whether Defendants' conduct constitutes an unlawful or unfair business practice, such that the public is likely to be deceived, is a question of fact. *Mosk v. National Research Co. of Cal.*, 201 Cal. App. 2d 765, 772 (1962). Virtually any law can serve as a predicate for an action under the unlawful prong of the UCL. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1361 (2010). A claim for breach of contract may serve as the basis for a UCL claim, so long as it constitutes conduct that is "unlawful, or unfair, or fraudulent." *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1117 n. 12 (C.D. Cal. Apr. 20, 2001).

Plaintiffs' Complaint refers to a plethora of deceptive and unfair and fraudulent conduct that must be presented before the trier of fact. Specifically, Plaintiffs allege that Defendants: (a) categorically and wrongfully denied Plaintiffs' and class members' claims; (b) failed and refused to perform a fair, objective, good-faith, and thorough investigation of the claims as directed by the California Insurance Code; (c) denied Plaintiffs' and class members' claims as part of a policy of categorically denying claims related to Coronavirus; and (d) failed to interpret its policies in an equitable manner and/or up to the standards required by California law (including, but not limited to, Cal. Ins. Code §790, *et seq.*). Doc. No. 1 at 30, ¶129.

Plaintiffs also alleged that Farmers violated the "fraudulent" prong of the UCL by: (a) promising Plaintiffs and class members coverage that was not; (b) promising, but failing, to evaluate each claim individually, reasonably, and in good faith, and (c) falsely and misleadingly indicating to Plaintiffs and class members that it was investigating their claims in good faith, when it did not, and categorically denying claims related to Coronavirus as part of a strategy to reduce their insurance payments related to Coronavirus. Doc. No. 1 at 31, ¶132.

HAEGGQUIST & ECK, LLP

Plaintiffs have plausibly pled their UCL claim because, as stated above, Plaintiffs have plausibly pled their breach of contract claims, in conjunction with "unlawful, unfair" and "fraudulent" conduct, and thus, may rely on Unfair Insurance Practices Act ("UIPA") violations. *See Zhang v. Superior Court*, 57 Cal. 4th 364, 384 (2013) ("[W]hen insurers engage in conduct that violates both the UIPA and obligations imposed by other statutes or the common law, a UCL action may lie."); *Watson Labs*, 178 F. Supp. 2d at 1117. Accordingly, Plaintiffs have adequately alleged plausible claims under the UCL.

## IV.   FARMERS GROUP, INC. AND FARMERS INSURANCE COMPANY, INC. ARE PLAUSIBLY LIABLE AND PROPERLY NAMED AS DEFENDANTS

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 678. The Complaint states Farmers Insurance Group, Inc. ("FIC") owns "Farmers Insurance Group of Companies" and "Farmers Insurance Group." Doc. No. 1 at 6, ¶14. The Complaint states in the next paragraph that Farmers Group, Inc. ("FGI") owns subsidiaries that issue, among other things, property insurance. Doc. No. 1 at 6-7, ¶15. This information is sufficient for this court to draw a reasonable inference that FIC and FGI could plausibly be liable under multiple legal theories.[6] Additionally, discovery has not begun and it would be premature to dismiss these Defendants without further information absolving them of responsibility.

Additionally, the cases cited by Defendants are completely distinguishable, as they apply to defendants who were statutorily barred from being included as defendants in the first place. *See Caul v. Winter*, No. 06CV2096 WQH (LSP), 2007

---

[6]   For example, liability could be based on direct participant liability, piercing the corporate veil, vicarious liability, respondent superior, or negligent undertaking theories.

U.S. Dist. LEXIS 68207 at \*13-14 (S.D. Cal. Sept. 13, 2007) (dismissing defendants who could not be included as defendants pursuant to 42 U.S.C. §2000e-16(c)); *Gibson v. Fedex Corp.*, No. 2:09-cv-01738-MCE-KJM, 2010 U.S. Dist. LEXIS 70235, at \*12-13 (E.D. Cal. July 13, 2010) (dismissing defendant who could not be included as a defendant pursuant to 28 U.S.C. §2679(d)(1)).  Indeed, where a statute curtails the addition of a defendant, no discovery or investigation will justify the inclusion of that party as a defendant.  Here, there are no such statutory impediments to include FIC and FGI as Defendants, and Plaintiffs case should be allowed to proceed against FIC and FGI, at the motion to dismiss stage.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety, or, in the alternative, Plaintiffs respectfully request leave to amend the Complaint.

Respectfully submitted,

Dated: August 31, 2020                    HAEGGQUIST & ECK, LLP
                                          AMBER L. ECK
                                          ALREEN HAEGGQUIST
                                          ROBERT D. PRINE


                                          By: _____
                                                AMBER L. ECK

                                          225 Broadway, Suite 2050
                                          San Diego, CA  92101
                                          Telephone: (619) 342-8000
                                          Facsimile: (619) 342-7878

                                          Attorneys for Plaintiffs and Proposed Class

CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 28, 2020.

/s/Amber L. Eck<br>
AMBER L. ECK

HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
ambere@haelaw.com