UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAPPY'S BARBER SHOPS, INC. et al., | Case No.:  20-CV-907-CAB-BLM |
| Plaintiffs, | **ORDER ON MOTION TO DISMISS** |
| v. | |
| FARMERS GROUP, INC. et al., | [Doc. No. 16] |
| Defendants. | |

This insurance coverage matter is before the Court on Defendants' motion to dismiss.  The motion has been fully briefed, and the Court deems it suitable for submission without oral argument.  For the following reasons, the motion is granted.

## I.    Background

Plaintiffs Pappy's Barber Shops, Inc., and Pappy's Barber Shop Poway, Inc., each operate a business in the San Diego area.  The complaint makes no distinction between the plaintiffs, referring to them jointly as "Pappy's Barber Shop."  The complaint does not expressly allege what type of business each Plaintiff operates, but based on the names of the entities, presumably the businesses are each a barber shop or salon.

The complaint names three defendants—Farmers Group, Inc., Farmers Insurance Company, Inc., and Truck Insurance Exchange—but makes no distinction among the three entities, referring to them throughout as "Farmers."  According to the complaint, "Farmers"

issued Pappy's Barber Shop an insurance policy with a policy period of February 1, 2020 through February 1, 2021 (the "Policy").  [*Id.* at ¶ 17.]  The Policy itself is not attached to the complaint, but Defendants attach a copy of the Policy to their motion to dismiss and ask the Court to take judicial notice of the Policy.  Plaintiffs did not oppose the request for judicial notice, and because judicial notice of the Policy is appropriate,[1] the request for judicial notice is granted.  According to the Policy itself, Truck Insurance Exchange is the insurer, and Plaintiffs do not dispute this fact in their opposition to the instant motion. [Doc. No. 16-2 at 9; Doc. No. 18 at 20.]

On March 16, 2020, in connection with the COVID-19 pandemic, San Diego Mayor Kevin Falconer "issued Executive Order No. 2020-1, prohibiting any gathering of 50 or more people and discouraging all non-essential gatherings of any size."  [Doc. No. 1 at ¶ 25.]  Three days later, California governor Gavin Newsom "issued Executive Order N-33-20, requiring 'all individuals living in the State of California to stay home or at their place of residence except as needed' for essential service and engage in strict social distancing." [Doc. No. 1 at ¶ 26.]  As a result of these orders, both Plaintiffs, along with "[a]ll California businesses not deemed essential, . . . were ordered to close their doors."  [*Id.* at ¶ 27.]  In addition, 49 state governments have issued orders limiting or prohibiting the operation of non-essential businesses as a result of the COVID-19 pandemic.  [*Id.* at ¶ 30.]  The complaint refers to these government orders collectively as the "COVID-19 Civil Authority Orders."  [*Id.* at ¶ 2.]

---

[1] On a motion to dismiss under Rule 12(b)(6), the court "may also consider unattached evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document."  *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (internal quotation marks and citation omitted). All of these requirements are met here.  Accordingly, the Court treats the Policy "as 'part of the complaint, and thus may assume that its contents are true for purposes of'" Defendants' motion to dismiss.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003)).  Defendants also request judicial notice of a bulletin from the California Insurance Commissioner, but because the Court did not consider the bulletin in connection with this opinion, that request is denied as moot.

On April 1, 2020, Plaintiffs made a claim under the Policy for business income losses they incurred as a result of the COVID-19 Civil Authority Orders issued by Mayor Falconer and Governor Newsom.  [*Id.* at ¶ 46.]  Defendants notified Plaintiffs that day that they were denying coverage and issued a formal denial letter on April 3, 2020.  [*Id.*]  According to the complaint, this denial of coverage was improper because several coverage provisions were triggered, and none of the Policy exclusions apply.

First, the complaint alleges that there is coverage under the "Business Income" provision, which states:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss.

[Doc. No. 16-2 at 15 (Policy § A.5.f.(1))].  Second, the complaint alleges that there is coverage under the "Civil Authority" provision, which states:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

[Doc. No. 16-2 at 27 (Policy § A.5.i.)].  Finally, the complaint alleges that there is coverage under the "Extra Expense" provision, which states:

> We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss.

[Doc. No. 16-2 at 27 (Policy § A.5.g.(1))].  According to the Policy, "Covered Causes of Loss" are "[r]isks of Direct Physical Loss unless the loss is" excluded in the exclusions section of the Policy or limited in the limitations section of the Policy.  [Doc. No. 16-2 at 23 (Policy § A.3.)].  The Policy defines "Business Income" as "[n]et income (Net Profit or

Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred . . . ."  [Doc. No. 16-2 at 25 (Policy § A.f.(1))].

The complaint alleges that none of the Policy's exclusions or limitations apply. More specifically, the complaint alleges that exclusions for (1) mold and microorganisms, (2) virus or bacteria, and (3) fungi, wet rot, dry rot, and bacteria, do not apply because "the efficient proximate cause of [Plaintiffs'] losses was precautionary measures taken by the state to prevent the spread of COVID-19 in the future, not because coronavirus was found on or around Plaintiffs' insured properties."  [Doc. No. 1 at ¶¶ 40, 42, 44.]  Along these lines, the complaint does not allege that COVID-19 or the coronavirus itself caused a direct physical loss triggering coverage under the Policy.  Rather, the complaint alleges only that the government orders themselves caused direct physical loss and damage to Plaintiffs' property.  [Doc. No. 1 at ¶ 93.]

Based on these allegations, Plaintiffs assert a total of six claims (for declaratory relief and breach of contract based on each of the three coverage provisions listed above) on behalf of themselves, a nationwide class, and California subclass, and a seventh claim for violation of California's unfair competition law ("UCL"), California Business and Professions Code section 17200 et seq., on behalf of Plaintiffs and the California subclass. Defendants move to dismiss the complaint in its entirety.

## II.   Legal Standards

The familiar standards on a motion to dismiss apply here.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is the Court "required to accept as

4

true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

### III.    Discussion

Neither party disputes that California law governs this insurance coverage dispute. *See, e.g., Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (stating that law of the forum state applies in diversity actions).  Under California law, the "interpretation of an insurance policy is a question of law" to be answered by the court. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995).  The "goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions." *Minkler v. Safeco Inc. Co.*, 49 Cal. 4th 315, 321 (2010) (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992)).

To accomplish this goal, the court must "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller*, 11 Cal. 4th at 18; *see also Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) ("The best evidence of the intent of the parties is the policy language."). "The clear and explicit meaning of [the policy] provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given them by usage, controls judicial interpretation." *Waller*, 11 Cal. 4th at 18 (internal quotation marks and citations omitted); *see also Minkler*, 49 Cal. 4th at 321 ("If contractual language is clear and explicit, it governs.") (citation omitted).  However, "[i]f the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], [courts] interpret them to protect the objectively reasonable expectations of the insured."

*Minkler*, 49 Cal. 4th at 321 (citations omitted).  That being said, "[c]ourts will not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19.

There are two parts to any coverage analysis.  First, "[b]efore even considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within the policy terms." *Waller*, 11 Cal. 4th at 16 (internal brackets and quotation marks omitted).  The insured bears the burden of proof in this regard, but the insuring agreement language in a policy is interpreted broadly in favor of coverage.  *See AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990) ("[W]e generally interpret coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured.").  If the insured proves that the claim falls within the policy terms, the burden then shifts to the insurer to prove that an exclusion applies.  *Waller*, 11 Cal. 4th at 16; *see also Universal Cable Prods., LLC v. Atl. Specialty Ins. Co*., 929 F.3d 1143, 1151 (9th Cir. 2019) ("The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded.") (quoting *MacKinnon v. Truck Ins. Exch.,* 31 Cal.4th 635, 648 (2003)).  Exclusions "are interpreted narrowly against the insurer."  *Minkler*, 49 Cal. 4th at 322.

Here, Defendants move to dismiss on the grounds that the complaint does not allege any "direct physical loss of or damage to property" as is required for coverage under the business income, civil authority, and extra expense coverage provisions.  In their opposition, Plaintiffs contend that this Policy language does not require "physical alteration to property," and that "jurisdictions around the country have held that a property that is uninhabitable or unsuitable for its intended purpose qualifies as a physical loss under commercial property insurance policies."  [Doc. No. 18 at 11.]

### Business Income and Extra Expense Coverage

For there to be coverage under the business income and extra expense provisions, there must be "direct physical loss of or damage to property at the described premises." Plaintiffs focus on the first alternative—"direct physical loss of"—arguing that it does not require a tangible damage or alteration to property and that loss of the ability to continue

operating their business as a result of the government orders qualifies. Plaintiffs are not the first policyholders to argue in court that government orders forcing their businesses to stop operating as a result of the COVID-19 pandemic trigger insurance under provisions similar or identical to the ones in the Policy here. Most courts have rejected these claims, finding that the government orders did not constitute direct physical loss or damage to property. *See, e.g., Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-CIV, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) (recommending dismissal of complaint seeking coverage for loss of business income as a result of Florida COVID-19 Civil Authority Orders because the requirement that the plaintiff's restaurant close indoor dining to mitigate the spread of COVID-19 was not a direct physical loss).[2]  As a district court explained just last week in an opinion granting a motion to dismiss a claim for coverage under identical policy language for business income losses of a restaurant due to COVID-19 Civil Authority Orders in Los Angeles:

> "When interpreting a policy provision, we must give terms their ordinary and popular usage, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (citation and quotation marks omitted). The Business Interruption and Extra Expense provision at issue here conditions recovery on "direct physical loss of or damage to property."
>
> Under California law, losses from inability to use property do not amount to "direct physical loss of or damage to property" within the ordinary and

---

[2] The case on which Plaintiffs rely, *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020), is distinguishable. In *Studio 417*, the district court based its denial of the insurer's motion to dismiss, at least in part, on allegations "that COVID-19 'is a physical substance,' that it 'live[s] on' and is 'active on inert physical surfaces,' and is also 'emitted into the air.' COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it 'unsafe and unusable, resulting in direct physical loss to the premises and property.'" *Studio 417*, 2020 WL 4692385, at *4. The policyholder also alleged that "it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus." *Id.* at *2. Accordingly, "[b]ased on these allegations," the district court held that the complaint "plausibly alleges a 'direct physical loss' based on 'the plain and ordinary meaning of the phrase.'" *Id.* Here, in contrast, Plaintiffs expressly allege that COVID-19 did not cause physical loss of or damage to their properties, alleging and arguing only that that the government orders themselves constitute direct physical loss of or damage to the properties.

popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a "distinct, demonstrable, physical alteration." *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010) (citation and quotation marks omitted). "Detrimental economic impact" does not suffice. *Id*. (citation and quotation marks omitted) . . . .

An insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage. For example, in *MRI Healthcare Ctr.*, the court held that lost use of an MRI machine after it was powered off did not qualify as a "direct physical loss." 187 Cal. App. 4th at 779. . . .

Plaintiff's FAC attempts to make precisely this substitution of temporary impaired use or diminished value for physical loss or damage in seeking Business Income and Extra Expense coverage. Plaintiff only plausibly alleges that in-person dining restrictions interfered with the use or value of its property – not that the restrictions caused direct physical loss or damage.

. . .

Plaintiff attempts to circumvent the plain language of the Policy by emphasizing its disjunctive phrasing – "direct physical loss of or damage to property,"–and insisting that "loss," unlike "damage," encompasses temporary impaired use. To support this argument, Plaintiff relies on *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, 2018 WL 3829767 (C.D. Cal. 2018). In *Total Intermodal*, the court concluded that giving separate effect to "loss" and "damage" in the phrase, "direct physical loss or damage," required recognizing coverage for "the permanent dispossession of something." *Id.* at *4.

Even if the Policy covers "permanent dispossession" in addition to physical alteration, that does not benefit Plaintiff here. Plaintiff's FAC does not allege that it was permanently dispossessed of any insured property. As far as the FAC reveals, while public health restrictions kept the restaurant's "large groups" and "happy-hour goers" at home instead of in the dining room or at the bar, Plaintiff remained in possession of its dining room, bar, flatware, and all of the accoutrements of its "elegantly sophisticated surrounding."

*10E, LLC v. Travelers Indem. Co. of Connecticut*, No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653, at *4–5 (C.D. Cal. Sept. 2, 2020) (internal citations to the record omitted). This analysis is persuasive and equally applicable here, as Plaintiffs make similar arguments for coverage under identical policy language and also rely on *Total Intermodal*

8

to support their position.  For all the same reasons, Plaintiffs have failed to plausibly allege any entitlement to coverage under the business income or extra expense provisions in their Policy with Truck Insurance Exchange.

### Civil Authority Coverage

There is also no coverage under the civil authority provision of the Policy.  To trigger coverage under this provision, there must be an "action of civil authority that *prohibits access to the described premises* due to direct physical loss of or damage to property, *other than at the described premises*, caused by or resulting from any Covered Cause of Loss." [Doc. No. 16-2 at 27 (Policy § A.5.i.) (*emphasis* added)].   Thus, to survive dismissal, the complaint must, at a minimum, allege that the government (1) prohibited Plaintiffs from accessing their premises (2) due to direct physical loss of or damage to property elsewhere. The allegations in the complaint do not satisfy either requirement.

First, the complaint does not allege that any COVID-19 Civil Authority Orders prohibited Plaintiffs from access to their business premises.  Rather, it only alleges that Plaintiffs were prohibited from operating their businesses at their premises.  Plaintiffs fail to make any distinction between their place of business (i.e., the physical premises where they operate their business), and the business itself, but this distinction is relevant to coverage under the Policy.  The Policy insures property, in this case Plaintiffs' property and physical places of business, and not Plaintiff's business itself.  To that end, the civil authority coverage provision only provides coverage to the extent that access to Plaintiff's physical premises is prohibited, and not if Plaintiff's are simply prohibited from operating their business.  The government orders alleged in the complaint prohibit the operation of Plaintiff's business; they do not prohibit access to Plaintiffs' place of business.

Second, even if the government orders alleged in the complaint could be construed as prohibiting Plaintiffs from accessing their premises, the orders were not issued due to direct physical loss of or damage to property *other than at Plaintiffs' premises*.  Just as the complaint does not plausibly allege any direct physical loss of Plaintiff's property, it also does not allege any direct physical loss or damage to property not at Plaintiffs' places of

business.  In the opposition, Plaintiff does not argue otherwise, referring only to its arguments under the business income and extra expense provisions that the complaint alleges direct physical loss of or damage to *Plaintiffs'* property.  [Doc. No. 18 at 16]; *see generally, 10E, LLC,* 2020 WL 5359653, at *5-6 (finding no civil authority coverage as a result of COVID-10 Civil Authority Orders requiring restaurant to cease indoor operations).

Accordingly, because the complaint does not plausibly allege (1) any civil authority orders that prohibited access to Plaintiffs' places of business (as opposed to simply prohibiting Plaintiffs from operating their businesses), or (2) any direct physical loss of or damage to property, other than at Plaintiffs' premises, the complaint does not state a claim for coverage under the civil authority provision of the Policy.

## IV.   Conclusion

Because the allegations in the complaint do not a state a claim for coverage under the Policy, Plaintiffs' claims for declaratory relief that there is coverage and for breach of contract must be dismissed.  Likewise, because the UCL claim is premised on the existence of coverage under the Policy, it is dismissed as well.  *See generally, 10E, LLC*, 2020 WL 5359653, at *6 (dismissing UCL claim based on allegation that an insurance policy provided coverage after concluding that the plaintiff was not entitled to coverage under the policy).  Accordingly, it is hereby **ORDERED** that the motion to dismiss is **GRANTED**, and the complaint is **DISMISSED** in its entirety.[3]

Plaintiffs make a passing request for leave to amend the complaint at the end of their opposition, but do not explain how an amended complaint would remedy any of the

---

[3] Because the complaint does not state a claim for coverage under the Policy, the Court need not address Defendants' separate argument for dismissal of Farmers Group, Inc., and Farmers Insurance Company, Inc. as defendants because they are not parties to the Policy.  However, the allegation that these defendants own subsidiaries that issue property insurance, which is Plaintiffs only argument for keeping these defendants in the case, is grossly insufficient to state a claim against them for declaratory relief, breach of contract, or violation of the UCL related to insurance coverage under a policy issued by Truck Insurance Exchange.  Plaintiffs are advised that if they seek leave to amend their complaint, they must also amend

deficiencies identified by Defendants in their motion.  Because any amendment is likely to be futile, before allowing Plaintiffs to amend their complaint, Plaintiffs must file a motion for leave to amend that attaches their proposed amended complaint, along with a redline showing all changes as compared with the original complaint.  If a motion for leave to amend is not filed by **September 21, 2020**, this dismissal of Plaintiffs' complaint will be with prejudice.  If Plaintiffs file a motion for leave to amend, Defendants may file an opposition on or before **September 28, 2020**.   The Court will then take the motion under submission without a reply and enter an order in due course.

It is **SO ORDERED**.

Dated:  September 11, 2020

_____

Hon. Cathy Ann Bencivengo
United States District Judge

---

their allegations as to these defendants.  Failure to include factual allegations as to why these defendants can be liable for coverage under an insurance policy to which they are not a party will result in dismissal of these defendants regardless of whether Plaintiffs can plausibly allege a direct physical loss to their property or property not at their premises.

11